May it please the Court. Brian Cannon for BabyBus. I intend to reserve four minutes for rebuttal. This case, Your Honors, illustrates the critical importance of filtering in copyright actions. The District Court is obligated to identify the non-protectable elements in the copyrighted works. Otherwise, there is a danger that the jury will use a layperson's understanding of substantial and that is not allowed. But that's what happened here, Your Honor. And we are respectfully requesting a remand for a new trial with a properly instructed jury. Was there any dispute about what the underprotected elements were in this case? I believe there was, Your Honor. So then how did the District Court instruct on what they are? Then the District Court would have to engage in fact-finding. No, Your Honor, that's actually a legal matter for the District Court. The District Court, the obligation is on the District Court to identify the non-protectable elements and to say these are the non-protectable elements. Well, as a general matter, but then you're saying the District Court had to find the specific parts of each video that are not unprotected and set them out? Well, it has to at least put out examples. And we're not here saying it has to be exhaustive like a thousand different elements. Yeah, that seems very odd because it would be just a long list of this is unprotected, this is not protected. Well, if you look at the instructions in Mattel, you will see there are non-protectable elements. The instructions in the Skidmore case, which came to this Court, was an en banc decision. There were three sets of non-protectable elements. The issue, the fatal flaw below, is the Court put no unprotectable elements in the jury instructions. So this isn't like Mattel. But didn't the District Court explain what the underprotected elements would be? Not in a sufficient way, Your Honor. The District Court, and this is instruction number 14, and that's at ER 85, what it said was, here are a list of generic protected elements and here are a list of unprotected elements. And if you indulge me, Your Honor, I'll actually read them because they overlap. The District Court's instruction 14 said, protected elements can include plot, themes, dialogue, mood, setting, pace, characters, sequence of events. The District Court also said in the same instruction, unprotected elements can include characters, plot, themes, dialogue, mood, setting, pace, sequence of events. All right. So I just don't see, isn't it the jury's role to then figure out, like, what fits in there and what isn't? No, Your Honor. That's the role of the District Court. That's the flaw below. It's the District Court's job to identify specifically. And that's from the Mattel case. In the Mattel case, this Court just — But the District Court is not the fact finder, right? So if there's a dispute about if there's an element that's unprotected or protected, wouldn't the fact finder have to determine that? The fact finder makes the comparison. But it's the District Court's job under the extrinsic prong. Now, the intrinsic prong, that is the fact finder's job. The fact finder does handle the intrinsic test. But before we get to the intrinsic test, the extrinsic test involves a legal step. And that obligation — the Apple court said, even though it's difficult to differentiate ideas from expression, the court must do it. That's in the Apple case, comparison of graphical user interfaces. So it's an obligation on the District Court. And I think Judge Kaczynski's decision in the Mattel case is very instructive here. There — But the Apple case was on summary judgment, right? Correct. So, I mean, I don't — I don't think there's any dispute that the District Court can step in if the facts aren't there. But that's why I didn't find Apple to be very helpful, because here the District Court said, well, the facts go beyond summary judgment. So then the question is — I mean, you agree this is a mixed question of fact and law, right? It can be, Your Honor, but it is still the obligation of the District Court to identify the nonprotectable elements. I understand — so in Apple, the District Court handled the extrinsic test and it resolved the summary judgment. It didn't have to get to the comparison in the intrinsic step, which is looking at the works as a whole. Mattel, I believe, is very instructive. In Mattel, the District Court identified several nonprotectable elements, but this Court ruled it was not enough. The District Court had to identify even more nonprotective elements. Well, but — so the way I read Mattel, I think — and I'd be interested in your pushback on this — is if you're going to start listing some under-inclusive elements, then — or, excuse me, if you're going to start listing some nonprotective elements, you can't be under-inclusive in that. But not that — I mean, I didn't see that much of a difference at the end of the day between the jury instruction here and the jury instruction in Mattel. Well, Your Honor, in Mattel, they listed the specific nonprotectable elements that had to do with the doll sketches. Here, the District Court just said plot could be protected. Generally. Yeah. Just a general category. Just general, like a listing from a case without even the examples from the casebook. But wouldn't that require a mini-trial, then, to figure out what to list on that jury instruction? That's what I'm having trouble with. I think it might require a hearing, or the Court could do it on its papers — on the papers. I mean, Apple said, look, it's not always easy to differentiate ideas from expression. It's not. Sounds like what you want is a copyright equivalent of a Markman hearing. That's right, Your Honor. In a patent case, the judge has a Markman hearing to determine as a legal matter what do the terms of the patent mean. And I think the analogy is quite similar here, where I think this Court's precedents are pretty uniform, that, you know, the District Court, as hard as it may be, and even though it might incorporate some facts, the District Court has an obligation under the extrinsic prong of the copyright law to say these are the nonprotectable elements, not just plot could be. Okay. But if it's disputed as a factual matter, then the District Court then has to make a factual determination that something is unprotected. That's probably correct, Your Honor. We didn't brief that specific issue. But if there is a factual dispute — the way it got teed up below is we baby busts submitted what we called up — this is the list of nonprotectable elements, and we would like these in the jury instructions. The Court gave none of them. So this is not a situation of did it give enough? Was it under-inclusive? The Court gave no specific examples. And the sort of example that we would ask for would be something like, you know, a cartoon baby with an oversized head and large eyes. Just that concept is not protectable. That is protectable or is not protectable? Is not protectable. That's an idea. It's a crowded genre. And so — So then if baby busts then oppose that — I mean, sorry, Moonbug opposed that, then what would the District Court have said? Like, oh, that large eyes on a baby is protected. Well, let's say — let's say Moonbug opposed that and said, no, that is protectable, large head, large eyes. Then the District Court is going to have to make a decision, and it could — and the decision is going to be, is it going to include that in the jury instructions or not? And I know inclusion in the jury instructions could be reviewed for abuse of discretion. But if there was fact-finding involved, like in — to get to Judge Hamilton's Markman hearing, it's a little bit different in a patent case because there's technical facts. There, if there's a fact-finding, there's clear error. But if a judge has to decide, is this particular element protected or non-protected, I think — and whether that goes in the jury instruction or not, I think that would be an abuse of discretion review. But let's say that they — he had — maybe this isn't a good hypothetical because you gave him specific examples to put in. But I kind of felt like if the District Court had gone further and then the — you know, and given a bunch of unprotectable examples, and then the jury still came back this way, you'd be up here arguing, well, the District Court went into the purview of the jury and told them what was — you know, told them too much. Well, that would be a very different case, Your Honor, because there you would have examples. Here, what the District Court did is — Didn't give any. None. And I don't — I'm not aware of a case from this court where a District Court gave none. If we look at the Skidmore instructions, which was an en banc decision, there were examples in footnote 10 of the — of the — of the Skidmore decision. And then, obviously, the Mattel case and the Harper House case. The Harper House case is an older case where copyright jury instructions were reversed because the District Court in the Harper House case cautioned the jury, don't compare non-protected elements, but didn't give any specifics about what the non-protected elements were. Can you address the model jury instruction? Yes. Because this did not seem to be inconsistent with the model jury instruction. Does that mean that the model jury instruction doesn't go far enough? If you indulge me to grab the model jury instruction, because I believe the language supports our position. Thank you. So the model jury instructions of — for the Ninth Circuit State, and this is 1719, section 17.19, that, quote, the court must instruct the jury as to, one, the non-protectable elements of the plaintiff's work. And as I interpret that in the model jury instructions, it has to — That's specific. It has to be specific. It has to be at least — I want to say at least exemplary, but there has to be some specific meat on the bone for the jury to say, okay, this is non-protectable, this is protectable. Like, even as we review the cases, and we've all reviewed the case law, there's examples in the case law that help us understand what is protectable, what is non-protectable. The jury didn't even have that. So if you're right on this, do we — we still get to — we still have to find harmless — harmlessness, right? Even if you were right that the jury instruction was flawed in some way, we would still have to say that that was harmful. That's correct. That's correct. So I want to — you know, the jury found, at the end of the day, with a specific specific verdict form, that JoJo was virtually identical to, I forget the main character in Cuckoo Melon. Correct. J.J. J.J. JoJo and J.J. JoJo and J.J., correct. Boy, it doesn't look good for you, does it? I will say, Your Honor, I will say — and I may have had the same reaction when I was I mean, this is the genre. This is — And what about — was it Doo-Doo? Dow-Dow? Dow-Dow, I believe, Your Honor. That was the false — That was the false — the falsely created —  Correct. Correct, Your Honor. That drew the sanctions? Correct, Your Honor. I've got to say, I've never seen copying evidence quite as compelling as this record. Well, Your Honor, I'm not here to defend at all the Dow-Dow issue and, you know, my client was sanctioned below and, you know, Judge Chen handled that. And I'm not here to defend it. But that still does not mean that the jury should not be properly instructed for the actual contested works. But the point here is about prejudice. Well, Your Honor, prejudice as to what? I'm sorry. Well, harmless. The instruction, given the finding of — Oh, yes, Your Honor. So I think my question — Given the evidence of very close copying and virtually identical characters. I really want to get back to the virtual identity question. If Judge Hamilton, if I can just respond to that question on the copying. Copying was conceded for six out of the 368 videos. So for six videos, copying was conceded. Copying of the character was not conceded. What was copied — and you can see this in the briefs — was sort of the blocking within the frame. It's sort of like, where are the objects in the frame, not the specific characters. That was the concession. And even if copying — I'm not focused on the concession. I'm focused on the evidence. Understood, Your Honor. The evidence was that the character was not copied. Obviously, that was a contested issue at trial. And here is where the jury instruction is so dangerous in what gets to Judge Nelson's question. Judge Nelson's question was, I think, essentially, Your Honor, hey, isn't this harmless because the jury found that it was virtually identical? And the issue there is, we don't know what the jury compared to be virtually identical. If it was the unprotected aspects, it's okay to be virtually identical to the unprotected aspects. The jury has to be properly instructed as to the nonprotected versus the protected elements in order to make the conclusion something is virtually identical or not. So even if something is virtually identical, having oversized eyes and a big head, if that's virtually identical, that doesn't resolve the issue of copyright infringement in any respect. But it's still — I mean, it did say unprotected elements. I mean, it talks about the protected elements, plot, themes, dialogue, mood, setting, pace, character, sequence of events, and other expressive elements. Clearly, we can read to say it fit within one of those categories. I'm sorry, and what fits? The virtually identical. I mean, you're saying the jury didn't know exactly what it was, but we can read the jury instructions and say, reading these jury instructions, the jury found that one of these protected elements was virtually identical. I'm not sure we can make that conclusion, Your Honor, because there's overlap between the — and I'll call it the high level or sort of the generic listing of what could be — Plot, themes, dialogue, mood — That's right. — setting, yeah. It's our position that — and I believe that the precedent supports it — that the court has to give specific examples. Well, did you — in closing, did you give examples of what you thought was unprotected? I think — I think we did argue to the jury what was protected versus not protected. Okay. But that doesn't — But why does it matter, then? Because it's the — I believe it's the job of the district court to set forth in the instructions under the extrinsic prong. Could I turn to the character issue? Because that's an independent reason for reversal, and it also speaks to the question on the jury form that Judge Nelson pointed out. The final question on the jury form asked, is the — let me just get it exactly correct,  If you find the J.J. character was infringed — and it refers back to question one on the jury form — it's very, very confusing the way this jury form was set up, because question one, and in fact all the questions on the verdict form, are directed to the registered copyrights. Those are the copyrights that Moonbug, the plaintiff, filed with the copyright office. The character issue is a separate issue. Sort of the persona of J.J., the character of J.J., separate from his visual rendering, separate from the registered copyright, in some rare cases in this circuit, you can get character protection, and examples include, as you know from the briefing, James Bond and the Batmobile and Godzilla, very sort of iconic characters. The district court in this case ruled as a matter of law, and there's de novo review on this, Your Honors, is that the character of J.J. is entitled to character protection, and the district court told the jury that in the instructions. I believe that was instruction number 10. And your argument is that that was error. That was error, and it's error on two fronts. One, it was error as a matter of law, because a generic cartoon baby in this genre is not entitled to the special protections of character protection, like James Bond or Godzilla. That's error number one. Error number two is that it was highly confusing and very prejudicial, honestly, for the district court to tell the jury in a jury instruction, the main character J.J. is protectable, and then not have a question on the jury form. There was no question on this verdict form that asked, is the character, the persona of J.J. infringed by the accused character, JoJo? All of the questions on the verdict form went to the registered copyrights, which is a different type of copyright. I'm into my rebuttal time, but happy to answer any questions you might have. Okay. Well, we'll give you time in rebuttal. Thank you. Thank you.  Good morning, your honors. May it please the court. Ryan Tice on behalf of Apelles, Moonbug, and Treasure Studios. They are the owner and creator of the hit cartoon series, Cocomelon. As you noted, the evidence of copyright infringement was overwhelming in this case, unlike any other cases that this court has ruled on. But that goes to harmless, but I do worry a little bit, is our case law clear enough on what a district court needs to do in the jury instructions here? Because, you know, I mean, I was trying to parse this out. I mean, the problem is they come up in all these different contexts, you know, somewhere on 12B6, somewhere on summary judgment. A couple of them have come up with jury instructions. Doesn't a district court, what would be wrong with saying a district court needs to give more concrete examples? I think two parts to that. First, I would like to show that the district court in this case did give concrete examples in line with this court's precedent. That's part one. Part two, I think... But not in 14. Does that come in somewhere else? No, it's in 10 and 14. But in 14, my opposing counsel skipped a couple of the words, and we can walk through that. And I think it would be helpful to understand... This is ER 45, the extrinsic test? Correct, number 14, under unprotected elements. It can include stock and standard concepts, right? Characters, plot, themes, dialogue, mood, setting, pace, colors, animation style, sequence of events, music, and any other features that are commonly used or firmly rooted in the tradition, unoriginal music that is consistent with Skidmore, the court's instruction in William Gay, et cetera. It's consistent with Harper House. If you go back to Harper House, that reversed an instruction that said, no, you don't have to consider protectability. And the problem with Harper House was there was blank sheets, and the court said blank sheets are unprotectable, so you can't tell the jury they don't need to consider protectability and consider the whole thing, and they're considering unprotectability. That was not an issue in this case. The judge gave clear guidance and let each counsel argue... Could the district court... I mean, what I'm trying to figure out is, is this a legal... Because this is ultimately a mixed question of law and fact, and I'm just trying to figure out which side of the line this all falls on, because at the end of the day, could the district court... Would it have been error for the district court to say, look, the curly hair, that's protectable. Big eyes, that's protectable. Would that have been error for the district court to do that? Did he have discretion to do that? It depends if there is a dispute about what is protectable and what is not, or whether it's being argued as forming the basis for infringement. It wasn't about just having a big head was not our basis for the claim of infringement. It was the combination of elements, and I think you run down a slippery slope. If you're requiring district courts to list every element and they get it wrong, you're going to see more appeals than ever. I agree with you. We're familiar with the reversal rate from the federal circuit on Markman claim constructions. And that's a pure question of law, unlike what we're dealing with here is a mixed question. And so I think putting the burden to try to get a court to delineate it, and the funny thing in this case is, you go back to summary judgment, we argued that the intrinsic test was satisfied as a matter of law and summary judgment. They opposed and said, no, no, there's dispute of fact. It's got to go to the jury. Judge Chen sent it to the jury. Now we're back here and said, no, he should have decided it. Examples of protectable material. The judge found J.J. protectable. They gave him that example. It's not stuck. That wasn't really even disputed at summary judgment. That's an example of a stock character. And your point, Judge Boubitaille, is did counsel, was they able to argue their positions to the jury? And that's all they did. At closing, they argued repeatedly, and I can go through them. I'll give you quotes. But repeatedly argued, as the judge instructed you in 10 and 14, standard concepts, stock ideas, things you find in the genre, crowded field, all of that's unprotectable. And even their own expert said, oh, all this stuff's unprotectable. And we really didn't dispute those were unprotectable. It was our specific expression that was wholesale copy. The specific expression, the creative elements, how these animators created. You had a professor. So you didn't oppose the list that was presented to be in the jury instruction? Well, we opposed their jury instructions in total because there was wrong formulations of law. If you look at that, that would have created more mess than it is. On balance, those were not issues in dispute, right? So where do you draw the line when it's unprotectable? A blue sky, for example. If the parties aren't arguing that a blue sky is protectable or not protectable, does the judge need to make that finding and tell the jury? Or do you give the jury guardrails? I think that's what this law or this court requires is guardrails so the jury doesn't get confused. And judge, we went through jury instructions like four or five times through the trial. I was lead trial counsel below, and we went through it repeatedly. And interesting thing throughout, opposing side said the jury can decide protectability and unprotectable things. They made that clear. And then they want examples. But is examples really what they're arguing for? They're saying you have to give a definitive list. And if you don't give it, it's wrong. So at the one hand, they're saying just examples. And then the other, no exhaustive list. Could a judge do that as a matter of law without, in essence, a background at least from expert testimony or the judge's own background to say, in essence, I know this genre of cartoon babies or superheroes or whatever the case may be? That seems very tough to do as a matter of law to me. 100%, especially in creative audiovisual works. If you look at the other cases, like the Apple computer case, it's a software program, very limited protectability. And it's clear to delineate, this is certainly not protectable under a matter of precedent. It's functional, for example. Or in other cases, this is licensed, free to use. And it can never support an infringement finding. So in those type of cases, yes, the judge can make those matter of laws. But when you're in a highly creative aspect or an audiovisual work like a cartoon, it becomes very difficult. But again, I go back to what our presentation was throughout the case and in closing versus what theirs was. It was the specific expression, the combinations that made up this work. And they wholesale copied it from start to finish. And that's where you get into the virtual identity. Yeah, I understand that part of it. But I'm more worried about a broader issue about, do the district courts have enough guidance? This isn't going to be the last copyright claim that's out there. And what is the rule do they know? Because if we say this is okay, then, I mean, aren't district courts going to just retreat to this generic statement? Now, in Harper, or to make sure I have my cases right, I think it was Harper, where we basically said, no, you've got to fix it. That seemed to be a problem where they started down this road. And we basically said, look, once you start down that road, you can't just list two unprotectable examples. You've got to list them all. And so, I mean, is the rule that as long as you don't start down the road and you just stick with this general stuff, you're fine? I think it depends on the facts of the particular case. And you're defining sufficient guardrails so the jury gets it right. What were the guardrails here? Because, I mean, you could look at these jury instructions and say this could have applied to any case. I mean, how was this carefully crafted? I mean, model jury instruction does suggest that the court and counsel specifically craft instructions on substantial similarity based on the particular works at issue, the copywriting question, and the evidence developed at trial. What about this number 14 suggests that that was done here? It was followed to a T. So let's start with the work at issue, right? Highly creative, auto-visual cartoon, right? Creative, it gets the broadest protection. Let's start with that. Then let's start with the theories proposed by each side or advanced by each side. We advanced kind of a very, like, combination, selection, arrangement of detailed elements of expression. And following this case's authority in those type of works, you look at, under the extrinsic test, plots, themes, dialogue. And when you have substantial similarity over that, it rises and meets that test. Their side was, no, this is all stock and dictated by the genre. And I think this is where Judge Bumate's question comes in. What did they argue in closing? This maps directly to it. That's why Judge Chen said this is what the sides are presenting. Let me formulate an instruction that meets those arguments so that lawyers can argue their case to the jury. And so I don't think it is generic. It is their thing was stock generic characters. There's other babies. It's all traditional to the genre. And— Was there any summary judgment motion on what was protected or unprotected? There was—it was largely on infringement. We moved for summary judgment of infringement across the board. They moved for non-infringement across the board. The judge did find J.J. protectable at summary judgment. That was it. Because maybe that's the way to solve this, is you move for summary judgment on what's unprotected, and then the judge decides on basis of that, and then you can put that in the jury instruction if you wanted. I think the judge ultimately did that in denying our motion for summary judgment. He said there was a dispute of fact regarding whether there's a combination of elements. We never contended, oh, a baby with a big head is why we win. It's the specific shape of that head that they ultimately traced over. You combine it with all of these other elements, his family makeup and that. And the judge said, you know, they put on expert testimony that all of these elements can be found in the genre, and you combine it all together. And we said, no, it's novel. And the judge said the jury could find either way. And so we go to trial. We put on our case. They didn't bring the experts they opposed our summary judgment with. The jury was left with our expert, our theory of the case, and their attorney argument about what is standard in stock and flows from the genre. And if you look at their proposed instruction, they didn't identify a lot of things that they ultimately argued were not protected. Like one of their themes was some of these videos are set to standard nursery rhymes, right, wheels on the bus. Now, Cocomelon has its own implementation of creative implementation of wheels on a bus, but they said use of standard public domain nursery rhymes can't form the base of the copyright. And so the court included that in their instruction, and that's intended. You know, what's in the public domain is not included. But it doesn't need to go through every public domain thing, especially in a case like this when you're dealing with dozens and dozens of copyrights. You think about one video, a judge having to go through every element and say, not protectable, protectable, and it messes up one, and then we're here again and saying that was prejudicial. I guess that's what I'm trying to figure out is just if I'm a district court judge, how do I read our law? And do I just consistently retreat to a safer position here and let the jury figure it out? Because the minute you step off the deck, you're putting yourself at a huge risk of exactly what you're saying. I think Judge Tan at the district court got exactly right. He tried really hard to follow the guidance set forth in the precedent, understand the party's position, and craft a jury instruction that captured that and gave the jury the tools to decide that. I think that is all that this court's law requires and should require going forward. And that's what the model instruction says. Look at the case. And it's up to our district court's judges to figure out and craft those jury instructions. And that's why it's an abuse of discretion standard when it's a formulation of jury instructions is because you give district courts that discretion to formulate the difficult question based on what they're seeing and what they saw in this case was two competing arguments, the combination of elements on one side versus the stock and generic genre on the other. And that's what the jury instructions captured. And I think that's the guidance, if any, is affirming this court's jury or the district court's jury instruction would give the best guidance possible. If it was, oh, you have to delineate everything, you're just going to create a mess. What about the copyrightability of the J.J. character? Yeah, I think that is pretty straightforward. He's the modern day Mickey Mouse. Billions of views. He's on Netflix. If you have a four-year-old, your four-year-old knows who Coco Mellon is. They walk down the aisles, that's J.J. And it's a pretty low bar for characters in audiovisual works. They just have to have, you know, the three towel tests. They conceded the first two were not in dispute. So is he especially distinctive and does he have some original features? And there's undisputed that he met that threshold. And their expert in deposition admitted he wasn't a stock character. I took her deposition. I said, do you contend that J.J. is a stock character? She's like, I'm not going to say that. He's the main star of the show. So if you think about like James Bond, a few features, he's protectable because he appears I mean, Penny's not, but James Bond is. Villains may not be. I didn't hear that. Sorry. The villains may not be. Yeah, because they are more generic, right? He's the star. That's basically what they said here, that none of the other characters were protectable. The district court said that, right? So there was a dispute of fact about that and let that go to the jury, which I think was the right call. But when it came to J.J. and the character, which is an element of the works, right? So J.J., he's consistently delineated throughout every video. He's the main character of every video. And, you know, our expert said he's the J.J. show, essentially. And everything is built around him and that makes him rise to a protectable character. And even they say the judge should have decided protectability. They did, but they don't like that decision. And it's a little conflicting. But the Tao test was met under the undisputed facts. The facts weren't in dispute on those issues. And the verdict form, anything you want to respond on that? The verdict form was clear. There was multiple rounds of that as well. There was no need to list a separate verdict question for the protectable character because that is an element of the works. And if you go to the James Bond cases, it's if you find that the character comes from that particular work, you find infringement of that work. It's not like it has its own independent copyright registration, for example. It is an element. So when the jury found, you know, this infringed, they're finding infringement of the character. And going to the 2D character, right, so they found that the 2D character without even all the conceptual qualities was infringed and virtually identical. So no issue with the verdict form. I don't think they seriously challenged the verdict form. That's just if you were a man, tell them to give us a better verdict form. Look at the verdict form they proposed. It was 300 pages long with, you know, they wanted the jury to write a treatise in response to every question about protectable, not protectable, the things that were substantially similar. And that would have never worked. And the rules allow for a general verdict so long as you go by copyright by copyright registration. The rest is for damages. I don't have any further if you have questions.  Thank you. Thank you. Thank you, Your Honors. There's four points I'd like to make, but I want to hone in on the question Judge Nelson had, which is, and the entire panel, whose job is it to make the differentiation at the extrinsic test? And I think if this Court adopts Instruction 14 as the test, I think then that should be, then that will become the standard jury instruction, at least for motion pictures, which is, here is a list of elements. They could be protected. Maybe they're not protected. We're going to figure it out at trial with experts. There'll be arguments to the jury, and the jury will figure out what's protected, what's not protected. To me, that's inconsistent with this Court's precedent because that will then blur the extrinsic and the intrinsic test, which is, I don't say it's unique to this circuit, but other circuits don't follow the extrinsic versus intrinsic test. The intrinsic test, which is the comparison of the works as a whole, that has to happen after the extrinsic test. And the extrinsic test is for the district court. But I'm not saying it's easy always to differentiate. Why wouldn't you just then have summary judgment on the extrinsic test, and then you could, then it's decided beforehand? Well, you could have summary judgment. Did you move for summary judgment? I don't believe we moved on those grounds. The protectability of the character as a character was definitely part of summary judgment. The issue is, you could have the extrinsic test, and the judge could identify, and then that goes into the jury instructions. And that's the procedure of Mattel and Harper House, where the district court, you know, did the work. And that happened at Apple as well. It just so happened in Apple, it was resolved at summary judgment because—and it wasn't a software case. That was actually the graphical interface. It was the imagery of using a desktop metaphor for Windows, like seeing the windows and the files on the screen. My problem with this argument is that this is all kind of judge-made law, right? None of this is compelled by the statute, by copyright law, like who has to filter versus not, right? That's correct. Judge-made law. So then, and I don't read our prior precedent as definitively saying that the judge has to do this. So I just, why would we create this, another burden? Well, Your Honor, respectfully, that is how I read the precedent. If you look at Mattel and Harper House, there, the criticism of the jury instructions in those cases was the judge did not identify the specific elements. And— Well, I didn't read it as saying, like, you have to list them out. I think they were saying you need to give some guidance, which makes some sense. You know, it was pretty general, saying, you know, the utilitarian aspect and blank spaces, it didn't, like, go line by line of what is protected and not protected. But the decision in this court was that it didn't go enough and that it needed to be reversed to give more. I think Mattel is even more instructive. And those were sketches, sketches of dolls, where the judge gave some elements, but not all. And this court said, Judge Kaczynski said, no, you've got to give more than that. Because otherwise— But that was summary judgment, though, right? Well, there were jury instructions being reviewed at Mattel, in the Mattel case. Oh, okay. Yeah. And then in Skidmore, which is the en banc decision from this court, the actual instruction, instruction number 16, which is footnote 10, that actually has three examples of non-protectable elements. And I think that's a good example of how a court can craft an appropriate jury instruction. Because the court in Skidmore said, here are three examples of musical elements that are not protectable. I think it was arpeggios, chromatic melodies, and three-note sequences, which was the heart of the issue in that case involving the Stairway to Heaven song. So there, the judge was saying, this isn't exhaustive, but it is examples of things that are specific to this case, this genre, and the actual issues for this jury to decide. And there, the court—if I may just finish. Thank you. Yes, yes. There, the court approved those jury instructions. So there was exemplary aspects of non-protectable elements.  No, look, thank you to both counsel. You've helped clarify the issues in a pretty complicated case. That case is now submitted, and that adjourns—that finishes us for the day. Thank you.
judges: Hamilton, NELSON, BUMATAY